De la Torre & Ramírez, demandantes y apelados, *v.* Josefa, conocida por Josefina Bengoechea y Macías, demandada y apelante.

No. 5858.—*Sometido:* Abril 20, 1934. *Resuelto:* Diciembre 12, 1934.

*Pellón & Ayuso*, abogados de la apelante; *De la Torre & Ramírez*, por su propio derecho.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Fundamentalmente la mayoría de las cuestiones envueltas en este recurso son de hecho, aunque algunas de ellas se refieren a cuestiones de derecho. El caso fué sometido a este tribunal el 20 de abril de 1933. Debido a casos pendientes que tenían preferencia, se nos hizo imposible resolver un caso de la importancia de éste antes que el tribunal se declarara en receso en agosto de 1933. En dicho mes y año la corte mudó sus oficinas del edificio del Convento de Santo Domingo al Capitolio Insular. Cuando en el curso ordinario se hizo un examen de los autos no fué posible hallar en ninguna parte la transcripción de evidencia certificada por el taquígrafo y aprobada por la corte. Al preguntarle a la apelante supimos que la transcripción taquigráfica fué radicada ante este tribunal en dos legajos escritos a máquina. Al ser notificada de que la transcripción taquigráfica se había extraviado, la apelante envió al Secretario de este tribunal su propia copia de dicha transcripción, certificada también por el taquígrafo. Puesto que la conclusión a que hemos llegado es confirmar la sentencia, nos hemos aprovechado de esta transcripción certificada y procederemos a discutir el caso tal cual si tuviésemos a la vista los autos correspondientes.

Estamos inclinados a convenir con la apelante y con sus admisiones en que la segunda causa de acción establecida por los demandantes fué abandonada. Bajo los señalamientos séptimo y octavo la apelante alega que la corte cometió error al no permitir que se practicara una investigación sobre lo

razonable de la cuantía de los honorarios reclamados por los apelados. La primera causa de acción se basaba en la teoría de una cuenta liquidada y aceptada, y si los demandantes y apelados estaban en lo cierto no podía surgir cuestión alguna ante la corte inferior o en apelación ante este tribunal respecto a lo razonable del valor de los servicios prestados. La única cuestión sería entonces respecto a si hubo o no tal convenio o quizá si el mismo podía existir y sobre otras cuestiones relativas a la admisión o exclusión de prueba. La segunda causa de acción fué abandonada y por ende todas las cuestiones relativas a lo razonable del valor de los servicios prestados desaparecen del caso.

Antes de percatarnos de que la evidencia era necesaria o de que faltaba, habíamos examinado los alegatos presentados por las partes y tuvimos y continuamos teniendo considerables dificultades con el primer señalamiento de error, que lee así:

"La corte inferior cometió notorio, manifiesto y grave error perjudicial a la apelante al resolver que la conducta de Antonio B. Macías como apoderado de la demandada determinaba de por sí la aceptación por ésta de la cuenta que por $39,025.00 pasó la demandante a la demandada y la obligación por parte de ésta de pagar su saldo de $16,426.50, sin que la corte inferior tomara en consideración la ausencia del vínculo jurídico creando tal obligación que no podía ser otra que un documento auténtico suscrito ante notario por el apoderado y cuya existencia no fué probada infringiéndose de este modo por el tribunal sentenciador el tercer párrafo del inciso sexto del artículo 1247 del Código Civil según fué enmendado por la Legislatura de Puerto Rico en 7 de marzo de 1912."

El artículo 1247 dispone:

"Deberán constar en documento público:

"1. Los actos y contratos que tengan por objeto la creación, transmisión, modificación o extinción de derechos reales sobre bienes inmuebles.

"2. Los arrendamientos de estos mismos bienes por seis o más años, siempre que deban perjudicar a tercero.

"3. Las capitulaciones matrimoniales y la constitución y aumento

de la dote siempre que se intente hacerlas valer contra terceras personas.

"4. La cesión, repudiación y renuncia de los derechos hereditarios o de los de la sociedad conyugal.

"5. El poder general para pleitos y los especiales que deban presentarse en juicio; el poder para administrar bienes, y cualquier otro que tenga por objeto un acto redactado o que deba redactarse en escritura pública, o haya de perjudicar a tercero.

"6. La cesión de acciones o derechos procedentes de un acto consignado en escritura pública.

"También deberán hacerse constar por escrito, aunque sea privado, los demás contratos en que la cuantía de las prestaciones de uno o de los dos contratantes exceda de trescientos dólares.

"En todo caso, los contratos efectuados por intervención de mandatario deberán constar en documento auténtico, concediéndose por el presente artículo a los jueces municipales y de paz, en ausencia de notario, facultades para certificar las declaraciones de autenticidad de dichos contratos, en la forma determinada por la ley estableciendo un registro de affidavits o declaraciones ante notarios y otros funcionarios, aprobada en 12 de marzo de 1908.

"No obstante lo dispuesto en el párrafo precedente, serán válidos los contratos de comercio efectuados por correspondencia, y todos aquellos en que la formalidad del documento auténtico pueda constituir una demora perjudicial a la naturaleza y rapidez del tráfico mercantil."

Los apelados dicen que este artículo es similar a otras secciones del Código Civil que exigen que las partes otorguen documentos formales. Insisten en que en lo que a las partes en sí se refiere, un contrato es válido cualquiera que sea la forma en que se otorgue, de conformidad con las disposiciones del Código Civil, y que tan sólo cuando alguna cuestión extraña a las partes está envuelta, es que surge la necesidad de un documento escrito. Bajo los hechos que tenemos ante nuestra consideración, no hay duda de que la cliente Josefa, conocida por Josefina Bengoechea y Macías, otorgó escritura de poder en favor de su hermano Antonio B. Macías, a fin de que éste actuara a nombre de ella en toda clase de negocios o en aquellos asuntos que tuvieran que ver con la Sucesión de Riera. La apelante no pone esto en tela de

juicio. Meramente sostiene que el contrato celebrado entre los abogados y el apoderado respecto a una cuenta liquidada debió haberse hecho constar por escrito, a fin de cumplir con las disposiciones del artículo 1247; que cuando se emplean letrados y éstos llegan a un acuerdo con su cliente sobre los honorarios, tal acuerdo participa de la naturaleza, o es específicamente, un nuevo contrato, y que ellos no pueden fundarse meramente en la relación de abogado y cliente. Si descansaran tan sólo en la relación existente entre abogado y cliente, ellos tal vez, o probablemente, tendrían que probar un *quantum meruit*. Cualquiera que sea el peso que pueda tener la contención de los apelados al efecto de que el artículo 1247 se refiere tan sólo a la formalización y no a la existencia del contrato, como los términos de dicho artículo están tan fuertemente expresados, como la objeción no fué debidamente suscitada en la corte inferior y como su decisión no es necesaria para la resolución del caso, prescindiremos de su estudio.

Estamos dispuestos a prestar atención, según sostienen los apelados, al hecho de que el suscitar esta cuestión ahora equivaldría a modificar la teoría en la corte sentenciadora. El caso fué a juicio en la corte de distrito y la contención principal allí fué si el Lic. Ramírez había convenido en hacer una rebaja de $15,000 en una cuenta de $39,000 que había sido reducida mediante pagos de unos $10,000 hechos por la apelante y de $12,500 hechos por orden de la corte a cuenta de los menores interesados en el caso. No existe disputa alguna sobre los $12,500. La apelante voluntariamente admite que aún adeudaría a los letrados algo más de $1,000, o sea, $1,400 y que ella está dispuesta a pagarles dicha suma. Por tanto, es evidente que el derecho de los apelados a basarse en su contrato verbal celebrado con Antonio B. Macías nunca fué planteado durante el juicio de este caso.

▋▋ No tenemos dudas de que la existencia de esta cuenta liquidada no envolvía meramente una cuestión de derecho substantivo sino de prueba. La apelante misma compara el

artículo 1247 con el estatuto de fraudes existente en Inglaterra y los Estados Unidos. Este estatuto de fraudes es notoriamente una cuestión de evidencia. Si en un juicio en los Estados Unidos se presenta prueba de un hecho y la parte contraria no invoca el estatuto de fraudes, la evidencia favorece a la parte que la presenta, más o menos en forma similar a lo resuelto en *Falero* v. *Falero,* 15 D.P.R. 118, y los casos que le siguen.

Los demandantes tenían un derecho prima facie, en ausencia de objeción, a presentar cualquier prueba para demostrar la existencia de una cuenta liquidada entre las partes y al dejar de oponerse la demandada renunció a cualquier derecho que pudiese tener.

También es evidente que todas las partes actuaron en el caso tal cual si la única persona a consultar fuera Antonio B. Macías, cuya autoridad fué reconocida por la demandada y apelante, y a nuestro juicio la apelante estaría impedida de atacar el derecho de su hermano y apoderado a tratar con estos abogados y a llegar a un acuerdo con ellos. En verdad ella admitió en este caso que él tenía derecho a hacer un arreglo sobre los $1,400 restantes.

Gran parte del juicio de este caso giró sobre la cuestión de si el Lic. Ramírez convino en hacer una rebaja de unos $15,000. Su declaración positiva fué que él no había hecho rebaja alguna. Él fué controvertido por Antonio B. Macías, quien declaró que cuando fué a ver a Ramírez sobre los $39,000 éste le dijo: "Esto es una temeridad de Paco," y según el testigo se eliminaron los $15,000. En apoyo de las manifestaciones de Macías, la demandada presentó la declaración de Cantero, quien tenía relaciones íntimas y de familia con todas las partes. La corte no dió crédito a las manifestaciones de este testigo y no hallamos lo suficiente en la prueba para decir que la corte estuviese equivocada, no obstante todas las relaciones de familia que el supuesto testigo desinteresado tenía con las partes, según hábilmente discute la apelante.

Conforme admitió Ramírez en la silla testifical, la cuenta de $39,000 presentada por él a Macía tenía ciertas marcas hechas por Ramírez, quien admitió haber hecho algunas de ellas. Al presentarse la cuenta escrita a la corte, Ramírez admitió que ciertas marcas que ahora figuraban en la cuenta ofrecida eran suyas. Negó que otros números que indicaban una rebaja hubiesen sido escritos por él. Félix Vega Nevárez fué llamado como perito calígrafo para probar que todo el manuscrito que aparecía en el pliego era de la misma persona. La corte no le creyó y una vez más no estamos suficientemente convencidos de que la corte inferior estuviese equivocada. También podrían agregarse algunas de las razones que tuvo la corte inferior, especialmente una al efecto de que parecería imposible que Ramírez, sin el consentimiento de su socio, repentina e instantáneamente redujera una cuenta de $39,000 eliminando de ella $15,000.

Respecto al sexto señalamiento de error no hallamos que la corte inferior descansara solamente en que Antonio B. Macías dejó de contestar a las varias cartas de los letrados solicitando la liquidación de la cuenta.

Al examinarse el récord se nota otra cosa. Después que la demandada había terminado su caso, los demandantes trataron de poner al Lic. Ramírez en la silla testifical nuevamente para contradecir lo que Macías y los otros testigos habían dicho. La apelante se opuso fundada en que no se había sentado base para atacar la veracidad de Macías en parte; que él ocupó la silla de los testigos y los demandantes habían dejado pasar la oportunidad para sentar los fundamentos para tal ataque. Como los apelados no han dado énfasis a este punto, y toda vez que ellos no son apelantes, no comentaremos mucho sobre la exclusión por parte de la corte del testimonio ofrecido. No obstante, somos del criterio de que debió permitirse a Ramírez manifestar que los hechos no ocurrieron en la forma expuesta por cualquiera de los testigos que declararon en su contra. Creemos que ella era prueba propia de refutación y por tanto si la corte, sin que

Ramírez le hiciera manifestaciones en sentido contrario, no dió crédito a las declaraciones de los testigos presentados en su contra, hay menos razón para considerar que la corte no estuviera en lo cierto.

No creemos que deben imponerse las costas.

*Bajo estas circunstancias, debe modificarse la sentencia en el sentido de excluir las costas, y así modificada confirmarse.*